IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHOMAS T. WINSTON,

                            Plaintiff,

         v.                                                   OPINION and ORDER

JOHN DOE 1, JOHN DOE 2, M. KARTMAN, GARY                      22-cv-126-jdp
BOUGHTON, CAPTAIN OR LIEUTENANT TAYLOR,
MATTHEW MUTIVA,

                            Defendants.

---

Pro se plaintiff and prisoner Shomas T. Winston has filed a complaint about his conditions of confinement at Wisconsin Secure Program Facility, mostly about delays in receiving mail. He later filed a supplement to his complaint to add another claim against defendants M. Kartman and Gary Boughton. Dkt. 7. I will construe those two documents together as the operative complaint.

The case is before the court for screening to determine whether it states a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) and § 1915A. For the reasons explained below, I conclude that it doesn't, and I will dismiss the case.

ANALYSIS

## A. Overview of the claims

I understand Winston to be challenging the following conduct in his complaint:

1) In October 2020, defendants John Doe 1 and 2 (unknown mail supervisors) delayed delivery of an appellate brief to Winston by 30 days, preventing him from addressing arguments raised in that brief.

2) In January 2021, John Doe 1 and 2 delayed delivery of three letters to Winston by approximately 20 days.

3) In February 2021, defendant Taylor (a security supervisor) delayed delivery of four pieces of "legal correspondence" to Winston by more than two weeks.

4) In April 2021, John Doe 1 and 2 delayed delivery of "legal correspondence" from this court to Winston by more than two weeks.

5) From January to April 2021, Winston complained to M. Kartman (the security director) and Gary Boughton (the warden) about the mail delays, but they refused to help.

6) In May 2021, defendant Matthew Muttiva, a prison sergeant, denied Winston law library time and gave false information to medical staff about Winston because of Winston's complaints about late mail.

7) In June 2021, Muttiva temporarily gave Winston's mail to another prisoner because of a grievance that Winston filed against Muttiva.

8) In September 2021, Muttiva confiscated 32 of Winston's personal photos because of "John Doe" criminal complaints that Winston filed against Muttiva.

9) In October 2021, Muttiva confiscated Winston's toenail clippers because of all of Winston's complaints against Muttiva.

10) Winston complained to Kartman and Boughton about Muttiva's retaliation, but they refused to intervene.[1]

The numerous retaliation claims against Muttiva have virtually no factual or legal overlap with the claims regarding mail delays, so it would be appropriate to sever those claims under Federal Rules of Civil Procedure 20 and 21 and the court's inherent authority. *See UWM Student Ass'n v. Lovell,* 888 F.3d 854, 863–64 (7th Cir. 2018). But none of Winston's allegations state a claim, so it is more efficient to address them all in one case.

---

[1] In a document that Winston calls "motion to notify the court," Winston alleges that a flash drive with his legal documents on it "did not work" after it was in the possession of unnamed staff. Dkt. 9. Winston doesn't identify this document as a supplement to his complaint, and he doesn't identify anyone he wants to sue, so I will not construe these allegations as an additional claim.

I will address Winston's allegations in the following four groups: (1) interference with Winston's appeal; (2) other mail delays; (3) retaliation by Muttiva; and (4) Kartman and Boughton's refusal to intervene.

**B. Interference with Winston's appeal**

Winston's allegations about interference with his appeal relate to *Winston v. Fuchs*, 837 F. App'x 402 (7th Cir. 2020), which affirmed this court's decision granting summary judgment to several prison officials on a retaliation claim, *see Winston v. Huneke*, No. 18-cv-953-jdp, 2020 WL 1557267 (W.D. Wis. Apr. 1, 2020). Winston alleged that the defendants disciplined him because of a grievance he filed, but both this court and the court of appeals concluded that the evidence was clear: Winston was disciplined because he had violated multiple orders not to contact a female staff member, not for exercising his constitutional rights.

In this case, Winston alleges that he didn't receive the government's appellate brief by the deadline, so he filed what he calls a "blind reply brief," in which he simply reargued some of the points in his opening appellate brief. Had he received the opposition brief on time, Winston says that he could have addressed arguments that the defendants raised in their brief and potentially persuaded the court of appeals to rule in his favor. As a result, Winston contends that the unnamed mail officials responsible for the delay violated his right to access the courts.

Winston's access-to-courts claim fails for two reasons. First, Winston doesn't allege that any defendant intentionally interfered with his appeal or that any defendant was even aware that he was waiting for an appellate brief. Rather, his allegations and the documents attached to his complaint suggest that Winston's mail was temporarily misplaced. *See* Grievance response, Dkt. 1-4 (explaining that mail was "discovered in the officer station"). It's well

established that negligent conduct doesn't violate the Constitution. *See U.S. v. Norwood*, 602 F.3d 830, 835 (7th Cir. 2010).

Second, Winston hasn't satisfied a second requirement for his access-to-courts claim, which is to show an injury in the form of a "meaningful impediment to his underlying claims." *Jones v. Van Lanen*, 27 F.4th 1280, 1287–88 (7th Cir. 2022). Winston says that he was prejudiced by being unable to respond to two arguments in the defendants' brief: (1) the declaration of another prisoner wasn't helpful because he wasn't similarly situated to Winston; (2) Winston had a pattern of inappropriately contacting female staff. If given the chance, Winston says that he could have shown "how the other inmate's history or nature of the accusations against him were comparable to Winston's," Dkt. 1, ¶ 24, and that his "pattern of contacting female staff" was actually the result of his job as a unit runner, which required him to interact with staff "regardless of gender," *id.*, ¶ 28.

Winston's attempt at showing prejudice fails for multiple reasons:

- Winston says that he received the brief in mid-October 2020, *id.*, ¶ 11, but the court of appeals didn't issue its decision until December 8, 2020. So Winston could have asked for an extension of time to file his reply brief or for permission to file a supplement to the brief that he had already filed.

- The parties had litigated in this court both of the arguments that Winston said he wanted to address in his reply brief. *See* Case no. 18-cv-953-jdp, Dkt. 42, at 11, 13. So Winston could have discussed those issues in his opening appellate brief.

- The information that Winston wanted to add to his reply brief appears to be factual, not legal. But an appellant generally can't submit new evidence on appeal, *Hart v. Sheahan*, 396 F.3d 887, 894 (7th Cir. 2005), so any new allegations wouldn't have made a difference.

- If Winston simply wanted to point to evidence that was already in the record, that wouldn't have made a difference either. The undisputed facts showed that the other inmate wasn't similarly situated to Winston, both because different decision makers were involved and because the other prisoner hadn't received a direct order not to contact female staff as Winston did. As for the evidence about

Winston's prison job, it was simply irrelevant. The "pattern" of inappropriate conduct wasn't about Winston doing his job; it was about continuing to contact particular female staff members even when he had no need to and even when he had been expressly instructed not to. *See* Case no. 18-cv-953-jdp, Dkt. 42, at 9–13. As the court of appeals noted, the "record conclusively establishes that the defendants were motivated to discipline Winston because he violated the order not to contact female staff." *Winston*, 837 F. App'x at 404. Nothing Winston said in this reply brief could have changed the result.

For all of these reasons, Winston's allegations about interference with his appeal fail to state a claim.

## C. Other mail delays

Winston alleges that other pieces of mail were as much as one month late between January and April 2021. He calls some of this "legal mail" or "legal correspondence," but he doesn't say that any of the delays prevented him from filing a lawsuit or appeal or otherwise interfered with a lawsuit, so he hasn't stated a claim for a loss of access to courts. Winston does say that he was receiving late mail around the time that he was waiting for the court of appeals' decision on his request for a rehearing on a habeas corpus appeal, which would affect his deadline for filing a petition for a writ of certiorari with the Supreme Court. Dkt. 1, ¶ 47. But Winston doesn't say that he missed that deadline. And he did file a petition, which was denied later that year. *See Winston v. Boughton*, 142 S. Ct. 129 (2021).

Interference with sending or receiving mail can violate the First Amendment even if it doesn't affect litigation. *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). But it's well established that relatively short-term delays in receiving mail don't implicate the Constitution. *See id.* at 780, 782–83 (no constitutional violation for 2 to 26-day delays of 34 items over period of several months). That's what Winston is alleging in this case, so he hasn't stated a claim for mail interference in violation of the First Amendment.

5

Winston says that the delays adversely affected his mental health to the point that he was having thoughts of self-harm. *See* Dkt. 1, ¶¶ 40, 44. Even if that's true, it doesn't mean that Winston's constitutional rights were violated. In determining whether a defendant violated the First Amendment, the focus is on the conduct of the defendant, not the possible effects on the plaintiff that the defendants couldn't have reasonably foreseen.

## D. Retaliation

Winston alleges that Muttiva retaliated against him in various ways for various reasons between May and October 2021. Each of these allegations fails to state a claim.

A prisoner must show three things to prevail on a retaliation claim: (1) he engaged in constitutionally protected conduct; (2) the defendant's alleged retaliatory conduct would likely deter a prisoner form exercising his rights in the future; and (3) the protected conduct was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). I will assume that Winston's grievances and complaints are all constitutionally protected. But Winston's claims fail on one or both of the other elements.

First, it isn't reasonable to infer that most of the alleged retaliatory conduct would deter the average prisoner from exercising his rights. Winston complains about relatively mild conduct: one denial of library time, telling another staff member that Winston had refused a request to get his ears flushed, giving another prisoner a letter addressed to Winston, and taking Winston's toenail clippers. Winston doesn't allege that any of this conduct had a concrete effect on him. For example, he doesn't say that he was unable to make up for his missed library time or that he was denied needed healthcare. He admits that Muttiva gave the letter to another prisoner only momentarily, Dkt. 1, ¶ 61, and he doesn't allege that the other prisoner

read the letter. These petty slights would be unlikely to have a deterrent effect, especially in the prison context. *See Holleman v. Zatecky*, 951 F.3d 873, 880–81 (7th Cir. 2020) ("Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." (internal quotation marks omitted)).

Winston also alleges that Muttiva deprived him of 32 personal photographs, which present a closer call. Winston doesn't describe the photos in detail, but he does say that some of the photos were of deceased relatives. Dkt. 1, ¶ 65. Personal photographs may be even more meaningful to an average prisoner than to nonprisoners in light of a prisoner's limited ability to see friends and family face-to-face. But Winston acknowledges that the photos were "extra." Dkt. 1, ¶ 64. He doesn't explain what that means, but documents attached to Winston's complaint indicate that he had 50 other photographs—the maximum allowed—and he would have been required to send the 32 photographs out of the prison if they hadn't been lost. Dkt. 1-39.

Regardless of whether the loss of photographs was sufficiently adverse to support a retaliation claim, the claim fails because Winston hasn't plausibly alleged that Muttiva was responsible for losing his photographs. Winston admits that he doesn't know what happened to the photographs. He says that a correctional officer named Laxton packed up the extra photographs when Winston was transferred to a different unit. Dkt. 1, ¶ 64. A correctional officer named Waldera says that he later saw the photographs in the officers' station on Winston's new unit. *Id.*, ¶ 65. At some point, the photos were lost. *Id.* Winston's only reason for believing that Muttiva took the photos is that Muttiva had access to the officers' station.

*Id.* So this claim is based on nothing more than speculation, which isn't enough to state a claim for relief. *See Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

**E.  Refusal to intervene**

Winston alleges that he complained to Kartman and Boughton about the delays in receiving his mail and about Muttiva's alleged retaliation, and they refused to do anything. I understand Winston to be raising both federal and state-law claims against these defendants.

Winston's federal claims against Kartman and Boughton are based on a theory that they failed to intervene when other defendants were violating his constitutional rights. I have concluded that Winston doesn't state a claim against the other defendants, so Winston's federal claims against Kartman and Boughton necessarily fail as well.

Winston also asserts state-law claims for intentional infliction of emotional distress and negligent infliction of emotional distress. Both claims fail for multiple reasons.

First, Winston doesn't allege that he filed a notice of claim, as required by Wis. Stat. § 893.82. "A complaint that fails to show compliance with § 893.82 fails to state a claim upon which relief can be granted." *Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997).

Second, the claims fail on the merits. Both claims appear to be focused on Kartman and Boughton's failure to address the problem with late mail. Among other things, a claim for intentional infliction of emotional distress in Wisconsin requires the plaintiff to show that the defendant intended to cause the plaintiff emotional distress and that defendant's conduct was extreme and outrageous. *Kopp v. Sch. Dist. of Crivitz*, 2017 WI App 80, ¶ 51, 378 Wis. 2d 740, 905 N.W.2d 843 Conduct isn't extreme and outrageous unless "[t]he average member of the community [would] regard the defendant's conduct in relation to the plaintiff . . . as being a

8

complete denial of the plaintiff's dignity as a person." *Alsteen v. Gehl*, 21 Wis. 2d 349, 359–60, 124 N.W.2d 312 (1963). Winston's claim fails, both because he alleges no facts suggesting that Kartman or Boughton intended to cause him distress and because failing to ensure more timely mail delivery didn't result in the "complete denial of [Winston's] dignity as a person."

A claim for negligent infliction of emotional distress requires the plaintiff to prove three things: (1) the defendant's conduct fell below the applicable standard of care; (2) the plaintiff suffered "severe" emotional distress; and (3) the defendant's conduct was a cause-in-fact of the plaintiff's injury. *Terry v. J. Broad. Corp.*, 2013 WI App 130, ¶ 38, 351 Wis. 2d 479, 514, 840 N.W.2d 255, 271. In this case, Winston's claim fails on the first two elements. Winston says that Kartman and Boughton should have done more to address his complaints about late mail, but Winston doesn't allege that mail delivery is the responsibility of the security director or the warden, and it isn't reasonable to infer that it is. In their responses to Winston's letters, Kartman and Boughton noted that the issues Winston raised had been addressed by other staff members. *See* Dkt. 1-23 and 1-27. High-ranking officials like Kartman and Boughton aren't required to personally handle a prisoner's complaint about late mail; it was reasonable for them to rely on their staff. *See Burks v. Raemisch*, 555 F.3d 592, 594–95 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.").

In any event, a claim for negligent infliction of emotional distress requires emotional distress that is so severe that "no reasonable person could be expected to endure it." *Hicks v. Nunnery*, 2002 WI App 87, ¶ 26, 253 Wis.2d 721, 742-743, 643 N.W.2d 809, 818 (internal quotation marks omitted). Stated another way, a plaintiff must show that "he was unable to function in his other relationships because of the emotional distress caused by defendant's

conduct. Temporary discomfort cannot be the basis of recovery." *Id.* This standard may be met in the context of witnessing a horrific event or experiencing a severe deprivation. *See, e.g., Pierce v. Physicians Ins. Co. of Wisconsin, Inc.*, 2005 WI 14, 278 Wis. 2d 82, 692 N.W.2d 558 (mother whose child was stillborn); *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994) (mother who witnessed "gruesome" aftermath of an accident that killed her child). Winston doesn't that allege that type of extreme distress. Even if he had, I would dismiss this claim on public policy grounds because there would be no "sensible or just stopping point" if a plaintiff could recover for emotional distress caused by late mail. *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*, 2004 WI 62, ¶ 1 n.1, 272 Wis. 2d 46, 680 N.W.2d 345 (court may dismiss negligence claim on public policy grounds).

It isn't clear whether Winston is asserting state-law claims against Kartman and Boughton for failing to take action against Muttiva. But if he is, those claims fail on the merits as well. Winston doesn't identify any basis for believing that Kartman and Muttiva were negligent in failing to conclude that Muttiva was retaliating against him.

## F.  Recording a strike

Under 28 U.S.C. § 1915(g), a prisoner may not bring an action or appeal a judgment without prepaying the filing fee if on three or more occasions an action or appeal filed by that prisoner "was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." Courts refer to these dismissals as "strikes." I am dismissing this case for failure to state a claim, so I will direct the clerk of court to record a "strike" under § 1915(g). If Winston receives three "strikes," he will not be able to proceed in forma pauperis in future cases unless he is imminent danger of serious physical injury.

ORDER

IT IS ORDERED that:

1. Plaintiff Shomas Winston's complaint is DISMISSED for failure to state a claim upon which relief may be granted.

2. The clerk of court is directed to enter judgment and close this case.

3. The clerk of court shall record a "strike" under 28 U.S.C. § 1915(g).

Entered August 26, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge